IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL WILLIAMS, | ) | No. C 04-5069 MMC (PR) |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | ) ) | |
| JOE McGRATH, et al., | ) ) | **(Docket No. 26)** |
| Defendants. | ) ) | |
| _____ | ) | |

On November 30, 2004, plaintiff, a California prisoner proceeding pro se and currently incarcerated at Pelican Bay State Prison ("PBSP"), filed the above-titled civil rights action under 42 U.S.C. § 1983. On May 11, 2005, after reviewing the complaint, the Court found plaintiff had stated cognizable Eighth Amendment claims against several PBSP officials. In the same order, the Court directed defendants to file a dispositive motion or, in the alternative, a notice indicating defendants are of the opinion such a motion is not warranted.

On October 11, 2005, defendants filed a motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground plaintiff had failed to exhaust his administrative remedies. See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003) (providing nonexhaustion claim should be raised in unenumerated Rule 12(b) motion rather than in motion for summary judgment). Plaintiff

filed an opposition, and defendants filed a reply.  Thereafter, on August 23, 2006, the Court granted plaintiff leave to file a supplemental opposition to the motion to dismiss, in accord with Wyatt.  See id. at 1120 n.14 (holding court must assure pro se prisoner plaintiff has "fair notice of his opportunity to develop a record" in opposition to an unenumerated Rule 12(b) motion).  Plaintiff filed two supplemental briefs in support of his opposition to the motion to dismiss, defendants filed a supplemental reply in response thereto, and plaintiff filed a reply in response to defendants' supplemental reply.  Accordingly, the motion has been fully briefed and is ready for decision.

## FACTUAL BACKGROUND

In its order of service, the Court summarized the facts alleged by plaintiff as follows:

> On February 24, 2004,[1] prison guards extracted two inmates from a cell near the cell in which plaintiff was housed.  In the course of that extraction, the officers discharged Oleorisin Capasicum ("OC") spray.  Because of the lack of windows or cross-ventilation, plaintiff's eyes and lungs began to burn, his nose discharged mucus, and his skin developed red patches.  Defendants Sergeant Navarro ("Navarro") and Medical Technical Assistant Munos ("Munos") walked by plaintiff's cell, at which time plaintiff asked them to remove him from the building because of his asthma and reaction to the OC spray.  They declined to do so.  Thereafter, Navarro and defendant Lieutenant Swift ("Swift") directed the extraction of another inmate, "Baca," from a nearby cell, during which OC spray was used periodically over the course of 20 to 30 minutes.  There was a sufficient amount of airborne spray that at least ten guards wore gas masks, other guards put on gas masks when they entered the building, and inmate Baca was rendered unconscious.  Plaintiff saw defendant Correctional Officer Harkins ("Harkins") supply gas masks to PBSP personnel. For the next 45 minutes, the inmates in that section of the facility were choking and coughing.  At the time of the extractions, defendant Correctional Officer Goodwin[2] was the control officer and responsible for the inmates.  All of said defendants were aware of plaintiff's medical condition.
>
> Plaintiff's asthma inhaler had not been replaced. He was having difficulty breathing and, along with other inmates, he began to yell for help. He also complained to at least 15 staff members who passed by his cell to participate in Baca's extraction.  Plaintiff experienced nausea, vomiting, lightheadedness, and ultimately fainted.  Defendant Correctional Officer Pope ("Pope") saw plaintiff at his cell door gagging, and then saw him fall down. Plaintiff struck his head, and was taken to the medical clinic, where defendant Nurse Aanerud ("Aanerud") stated that she thought he was malingering.

---

[1] All dates in this order are in 2004, unless otherwise specified.

[2] Plaintiff identifies this defendant as "Goodwin" in the body of the complaint and as "Goodman" in the caption.

2

> Defendant Nurse Practitioner Win-Risenhoove ("Win-Risenhoove") examined him, cleaned the wound on his head, and ordered Aanerud to dress the wound. Plaintiff had a bruise on his head, as well as a "golf-ball" size bump, and a cut, which caused some bleeding. Aanerud did not consider the injury to be serious, sent plaintiff back to his cell, and denied plaintiff's request for pain medication. Because plaintiff could not stand up properly, he was taken back to his cell in a wheelchair. At approximately 6:00 p.m., plaintiff agreed to be removed from his cell while the cell and surrounding area were decontaminated.
>
> On February 26, plaintiff complained of headaches and chest pain to Aanerud. In the ensuing weeks, plaintiff submitted forms requesting medical care for these symptoms, as well as for nausea, dizziness, and asthma.
>
> On March 2, he submitted an inmate grievance regarding his exposure to the OC spray and resulting medical problems. A hearing on the grievance was held by Lieutenant Foss, who denied the grievance. Plaintiff's subsequent appeals at the higher levels likewise were denied.
>
> On April 8, plaintiff was examined by Win-Risenhoove, who renewed various medications plaintiff had been receiving. Over the next ten days, plaintiff submitted more forms requesting medical care for ongoing asthma problems. On April 22, Win-Risenhoove examined plaintiff again, renewed his asthma medications, and scheduled a follow-up appointment for June 4. During the month of May, plaintiff continued to submit forms requesting medical care for his asthma, and was told by defendant Registered Nurse Garrett ("Garrett") that he would be seen. On June 1, Win-Risenhoove saw plaintiff again, and she again renewed his medication. On August 19, plaintiff requested that his medications be renewed, and, at his visit with Win-Risenhoove on August 24, his medications were renewed.

(See Order of Service, filed May 11, 2005, at 1:20-3:14.)

## DISCUSSION

A.   Motion to Dismiss

    1.   Standard of Review

Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[3] If the court concludes the

---

[3] If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. Id. at 1120 n.14. As noted above, plaintiff was given such notice by the Court on August 23, 2006.

3

prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the complaint without prejudice. Id. at 1120.

      2.      The Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion requirement requires "proper exhaustion" of all available administrative remedies. Woodford, 126 S. Ct. at 2387.

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal written appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("Director"). See Barry v Ratelle, 985 F. Supp 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). See id. at 1237-38.

      3.      Analysis

In his complaint, plaintiff makes the following allegations regarding his exhaustion of administrative remedies. Plaintiff's allegations are supported by documentation attached to

4

1 his complaint.

2   On March 2, 2004, plaintiff submitted an appeal at the informal level of review, complaining about his exposure to OC spray during the February 24, 2004 cell extraction, and his resulting medical problems.  The action requested by plaintiff in the appeal was for prison officials to determine, before they used OC spray to accomplish a cell extraction, whether the prisoner being extracted, or prisoners housed in the same cell unit as the prisoner being extracted, suffered from asthma, and, if so, that those prisoners be offered the opportunity to leave the area before the extraction took place.  (Compl. ¶ 55 & Ex. E at 1.)  Review of plaintiff's appeal at the informal level was bypassed pursuant to prison procedures, and the appeal was forwarded directly to the first formal level of review (hereinafter referred to as plaintiff's "first-level" appeal).  (Compl. ¶ 57 & Ex. E at 4-5.)  On approximately April 20, 2004, plaintiff received the response to his first-level appeal, (Compl. ¶ 64), which was a denial.  (Compl. Ex. E at 6-7.)

   On April 22, 2004, plaintiff submitted a second-level appeal.  (Compl. ¶ 64.)  On May 25, 2004, that appeal was denied.  (Compl. ¶ 67 & Ex. E at 10.)

   On May 26, 2004, plaintiff submitted a third-level appeal to the Director's Level of Review.  (Compl. ¶ 67.)   On July 10, 2004, N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch, returned plaintiff's appeal to him because it was missing the "CDC 7219, Report of Injury," and because plaintiff had not included copies of the incident reports discussed in the response to plaintiff's first-level appeal.  (Compl. ¶ 69 & Ex. E at 12.)  On July 14, 2004, plaintiff submitted a request to "Dr. Risenhoove or R.N." for a copy of the "Report of Injury" so that he could complete the appeals process.  (Compl. ¶ 69 & Ex. E at 13.)  Approximately two weeks later, plaintiff resubmitted his third-level appeal, along with the "Report of Injury."  (Compl. ¶ 69.)

   On September 7, 2004, Grannis returned plaintiff's appeal to him again, because it was missing "the complete CDC 837, Incident Report (007-04-02-0152, 007-04-02-0153)."  (Compl. ¶ 73 & Ex. E at 16.)  Grannis informed plaintiff that plaintiff's assigned counselor, or the Appeals Coordinator, or plaintiff's parole agent could answer any questions plaintiff

might have about the appeals process.  (Id.)

On September 12, 2004, plaintiff submitted requests to both his assigned counselor, T. Cook ("Cook"), and the Appeals Coordinator, M. Nimrod ("Nimrod"), asking for copies of the relevant incident reports so he could complete the appeals process.  (Compl. ¶ 73 & Ex. E at 17-18.)  On September 13, 2004, Nimrod told plaintiff that plaintiff needed to ask his counselor to look in plaintiff's file for the reports.  (Compl. ¶ 73 n.10 & Ex. E at 18.)  On September 23, 2004, Cook responded to plaintiff's request as follows:

> These 837's are not in your c-file as they were for another incident.  Appeals will get access to these.  You cannot get copies.

(Compl. Ex. E at 17.)

Plaintiff did not resubmit his third-level appeal or initiate any other appeals regarding the claims at issue in the instant action.

Defendants contend plaintiff did not exhaust his administrative remedies because he never received a third-level decision on his appeal.  Plaintiff argues he did exhaust his administrative remedies, for the following reasons: a third-level decision should have been issued but was not, in violation of regulatory time limits; plaintiff was precluded from proceeding further in the appeals process due to his inability to obtain access to the incident reports requested by the third-level reviewer; and, defendants had adequate notice of the claims against them before plaintiff filed suit. The Court addresses the parties' respective arguments below.

          a.     <u>Regulatory Time Limits</u>

California's regulations pertaining to the inmate appeals process contain time limits for submitting or reviewing appeals.  See Cal. Code Regs. tit. 15, § 3084.6.  With certain exceptions, third-level appeals must be responded to and returned to the appellant within sixty working days from the date the appeal is received.  See id. § 3084.6(a), (b)(4)-(5).

Here, plaintiff contends the sixty-day period for responding to his third-level appeal was exceeded when, on September 7, 2004, Grannis returned plaintiff's third-level appeal to him for the second time, telling plaintiff he still needed to submit additional documentation.

6

Plaintiff argues the sixty-day time limit was exceeded with respect to both his initial third-level appeal and his resubmitted third-level appeal.

There is some authority for the proposition that the exhaustion requirement may be satisfied if a prisoner files an inmate appeal and receives no response within the time allotted for a response under appeal procedures. See, e.g., Gregory v. PHS, Inc., No. Civ. A. 00-467-SLR, 2001 WL 1182779, *3 (D. Del. Sept. 21, 2001) (holding prisoner satisfied exhaustion requirement where defendants conceded he had filed grievance and there had been no response thereto). In the instant case, however, plaintiff's third-level appeals were responded to within the regulatory time limits. Plaintiff submitted his first third-level appeal on May 26, 2004. Within sixty days, on July 10, 2004, Grannis responded to the appeal by returning it to plaintiff as incomplete. Plaintiff resubmitted his third-level appeal approximately two weeks after July 14, 2004.[4] Within sixty days, on September 7, 2004, Grannis responded to the appeal by again returning it to plaintiff as incomplete.

Accordingly, the Court finds no support for plaintiff's argument he exhausted his administrative remedies due to defendants' failure to respond to his third-level appeals within regulatory time limits.

### b. Proper Exhaustion

Plaintiff argues he exhausted his administrative remedies on the date he resubmitted his third-level appeal because no further administrative remedies thereafter remained available to him. Specifically, he maintains that after he was told by his counselor he could not have access to the incident reports Grannis was requiring him to submit, there was nothing further he could do to complete his appeal; accordingly, plaintiff maintains, Grannis should have independently obtained the reports and reviewed the third-level appeal.

Defendants argue plaintiff did not properly exhaust his administrative remedies. In particular, defendants argue, plaintiff did not comply with the procedural rule requiring him

---

[4] Plaintiff does not provide the exact date he resubmitted his appeal, but states in his complaint that it was approximately two weeks after July 14, 2004, the date he requested a "Report of Injury." (Compl. ¶ 69.)

7

1 to submit the incident reports with his third-level appeal, because two avenues of compliance
2 remained available after plaintiff's counselor and the Appeals Coordinator failed to provide
3 him with those reports.  First, defendants argue, plaintiff could have resubmitted his appeal to
4 the third level after he learned he could not have access to the required incident reports, and
5 explained therein to Grannis that he had followed Grannis''s advice to ask his counselor and
6 the Appeals Coordinator for assistance, but that he still could not get copies of the incident
7 reports.  Second, defendants argue, plaintiff could have initiated a new appeal requesting the
8 incident reports.

9 　　　In response to defendants' first contention, plaintiff argues it would have been
10 fruitless for him to resubmit his appeal without the incident reports, because Grannis had
11 previously refused to consider the appeal if it did not include the incident reports.  Plaintiff
12 also argues that if Grannis would have agreed to consider the resubmitted appeal without the
13 incident reports, such agreement would have shown the documents were not necessary for
14 determination of the appeal, and, if that were the case, plaintiff's submission of the third-
15 level appeal without the incident reports should have satisfied the exhaustion requirement.

16 　　　In response to defendants' second contention, plaintiff argues he could not have
17 initiated a new appeal requesting the incident reports, because such an appeal would have
18 been deemed a duplicative appeal on the same matter, the submission of which is prohibited
19 by appeal regulations.  See Cal. Code Regs. tit. 15 § 3084.3(c)(2).  Plaintiff further argues his
20 requesting the incident reports from the Appeals Coordinator would have been pointless,
21 because the Appeals Coordinator had denied plaintiff's earlier request for the incident
22 reports.

23 　　　The Supreme Court has held the PLRA's exhaustion requirement cannot be satisfied
24 "by filing an untimely or otherwise procedurally defective administrative grievance or
25 appeal."  Woodford, 126 S. Ct. at 2382.  Rather, the exhaustion requirement requires "proper
26 exhaustion" of available administrative remedies.  Id. at 2387.  "Proper exhaustion demands
27 compliance with an agency's deadlines and other critical procedural rules because no
28 adjudicative system can function effectively without imposing some orderly structure on the

course of its proceedings." Id. at 2386 (footnote omitted).

In the instant case, the third-level appeal plaintiff resubmitted was procedurally defective because it did not include required documentation. The Court finds unpersuasive plaintiff's contentions that he could not cure the deficiency and submit a perfected third-level appeal. Defendants' suggested options for plaintiff's satisfaction of the procedural requirement are both logical and reasonable, and are not prohibited by appeals regulations. Indeed, plaintiff's assigned counsel expressly suggested to plaintiff that "Appeals could get access to" the requisite reports if needed. (See Compl. E at 17.) By contrast, plaintiff's objections are based on speculation without evidentiary support. Accordingly, the Court concludes plaintiff did not properly exhaust his available administrative remedies.

### c.  Notice

Lastly, plaintiff argues his administrative remedies are exhausted because defendants had adequate notice of the claims against them before plaintiff filed suit. The Supreme Court has made clear, however, that the primary purposes of the exhaustion requirement extend well beyond that of providing notice of possible legal action to potential defendants. See Jones v. Bock, 127 S. Ct. 910, 923 (2007) (discussing benefits of exhaustion requirement; finding promotion of early notice to those who might later be sued is not "one of the leading purposes of the exhaustion requirement"). As the Supreme Court observed in Jones:

> We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

Id. (citing Woodford, 126 S. Ct. at 2378; Porter v. Nussle, 534 U.S. at 524-25.)

In the instant matter, plaintiff's failure to exhaust his administrative remedies through the third level of review deprived Grannis – the appeals reviewer with the highest level of authority – of the opportunity to respond to plaintiff's claims and remedy the situation, and foreclosed the development of an administrative record clarifying the contours of the dispute. See Porter, 534 U.S. at 525. Consequently, even if defendants were put on notice of plaintiff's claims against them, the exhaustion requirement was not satisfied as a result

9

thereof.

### d. Summary

As discussed above, the Court finds defendants did not fail to respond to plaintiff's third-level appeal within regulatory time limits, plaintiff did not properly exhaust his administrative remedies, and any notice defendants had of plaintiff's claims against them did not satisfy the exhaustion requirement. Accordingly, the Court will grant defendants' motion to dismiss the complaint.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is hereby GRANTED, and the above-titled action is hereby DISMISSED without prejudice to plaintiff's refiling his claims after all available administrative remedies have been exhausted.

This order terminates Docket No. 26.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: October 12, 2007

_____
MAXINE M. CHESNEY
United States District Judge